Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. An employer-employee relationship existed between the employee-plaintiff and the employer-defendant.
4. The employer-defendant is self-insured and Constitution States Servicing Company is the servicing agent for employee-plaintiffs claim.
5. An index of medical records marked as stipulated exhibit 1 was received into evidence.
6. Subsequent to the hearing, the parties submitted a Form 22 that was marked as stipulated exhibit 2 and received into evidence.
7. Medical records from Hoots Memorial Hospital were marked as stipulated exhibit 1A and received into evidence.
8. Medical records from Dr. Courtney Whitman were marked as stipulated exhibit 1B and received into evidence.
9. Medical records from Carolina Neurosurgical Associates, P.A. were marked as stipulated exhibit 1C and received into evidence.
***********
 ADDITIONAL EXHIBITS
1. A prescription history was marked as plaintiffs exhibit 1 and received into evidence.
2. A first aid report was marked as defendants exhibit 1 and received into evidence.
3. A disability supplemental claim report was marked as defendants exhibit 2 and received into evidence.
4. A Form 18 dated September 8, 1998 was marked as defendants exhibit 3 and received into evidence.
5. A Form 33 marked as defendants exhibit 4 was received into evidence.
6. A Form 18 dated June 19, 1998 was marked as defendants exhibit 5 and received into evidence.
7. An employee statement marked as defendants exhibit 6 was received into evidence.
8. A June 8, 1998 letter from the plaintiff was marked as defendants exhibit 7 and received into evidence.
9. A typed letter by the plaintiff was marked as defendants exhibit 8 and received into evidence.
10. Attendance records marked as defendants exhibit 9 were received into evidence.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-five year old female. She worked for Vintage Yarns for approximately five or six years and after that company was purchased by defendant-employer, she worked for defendant-employer for approximately four years. During this time, plaintiff was employed as an inspector, inspecting finished packages of yarn. In this position, plaintiff picked up packages of yarn, which weighed between 4 and 22 pounds, inspected them, placed a plastic bag over them, and then placed the packages on a buggy, which has racks on it.
2. Plaintiff testified at the hearing before the Deputy Commissioner that her back had never hurt prior to her alleged incident of June 1997. However, a disability claim form signed by plaintiff in 1993 lists as a current condition "back pain/muscle spasms. The medical records of Dr. Richard Bey from March 23, 1993 support this, which relate, in part, "extreme pain shooting down her back into her buttocks. Furthermore, as Darrin Adams, plaintiffs supervisor, testified and as reflected on employees 1997 attendance calendar, on May 23, 1997, just a few weeks prior to her alleged injury, plaintiff called in sick because her back was hurting. Plaintiff offered Adams no other explanation and reported no injury at this time. When asked on cross-examination if she had had any such problems in the months prior to her alleged injury, plaintiff testified that she could not remember.
3. Plaintiff testified at the hearing before the Deputy Commissioner that on June 7 or 9, 1997, she injured her back on the job. Plaintiff alleges that at that time, the production lines backed up and Pat Hinshaw, the supervisor, told the inspector, Rhonda Beavers, to keep the line moving. According to the plaintiff, Ms. Beavers and plaintiff began pushing boxes of yarn, weighing between 500 and 700 pounds, down the line. According to the plaintiff, as she was pushing a box, she felt something "pop in her lower spine and her back began to burn. Plaintiff testified that at her lunch break after the injury she informed Brenda Driver, Anita Smyres, Shirley Hicks, and Rhonda Beavers that she had hurt her back pulling boxes. Later that day, around 3:30 p.m., plaintiff asserts that she told Ms. Beavers that her back was killing her and she needed to go to the office to call a doctor.
4. Plaintiff further testified that on the day of her injury she went to Dr. Evans office and saw Kim Phillips, physicians assistant. She was given muscle relaxers and heat packs. Plaintiff was not scheduled to work the following three days and next worked on a Sunday, at which time she worked only a few hours before leaving work.
5. Based on plaintiffs 1997 attendance calendar, plaintiff acknowledged that her alleged injury could not have occurred on June 7, 1997, because she did not work that day. Plaintiff also agreed that her alleged injury could not have occurred on June 9, 1997, because she worked a full eight hours that day and worked a full eight hours each day that week and thus did not work a partial day followed by three days off, as she recalled occurring with her injury.
6. Plaintiff also filled out various Industrial Commission forms, a Form 18 on September 8, 1998 and a Form 33 on the same date, which list a date of injury of June 23, 1997. This is also the same date that plaintiff first saw Kim Phillips, a physicians assistant, with complaints of back pain. However, plaintiffs attendance record shows that she was out sick that day, having called Darrin Adams to inform him that her back was hurting, but not providing any reason for the back pain. Plaintiff had previously completed an Industrial Commission Form 18 on June 19, 1998, which lists dates of injury of August 1997 and October 9, 1997. However, plaintiff admitted, based on her attendance calendar, that she did not work on October 9, 1997. She also testified that she had had only one alleged incident at work, which she believes occurred in June 1997, and did not have a subsequent incident involving her back in August or October 1997.
7. Rhonda Beavers is an instructor at defendant-employer. An instructor is an hourly employee whose main responsibility is to train other employees in proper job techniques. Ms. Beavers organizes job responsibilities for the other employees in the supervisors absence, but has no authority to hire or fire, and has no authority to discipline employees. She did, however, have supervisory authority over the plaintiff. Ms. Beavers could not remember plaintiffs report to her that plaintiff hurt her back on the job in 1997. Ms. Beavers did not witness any alleged injury and does not remember plaintiffs request for Ms. Beavers to call a doctor or calling the doctor for plaintiff.
8. Brenda Driver is an inspector at defendant-employer. Ms. Driver was unaware of any work-related injury to plaintiffs back in 1997. Further, contrary to plaintiffs testimony, plaintiff did not inform Ms. Driver in the break room that she had just hurt her back at work. Ms. Driver was aware that plaintiff had complained of back pain but plaintiff did not attribute it to any cause and Ms. Driver could not recall when this incident occurred. At some time much later, plaintiff informed Ms. Driver that she had hurt her back pushing boxes on the line.
9. Cynthia Hutchins was also an inspector at defendant-employer who quit in January 1998. She worked with plaintiff in June 1997. Ms. Hutchins did not witness any accident at work involving plaintiffs back. Plaintiff did not tell Ms. Hutchins at the plant that she had just suffered an injury, as asserted by plaintiff. Sometime later, although Ms. Hutchins does not recall when, plaintiff told Ms. Hutchins in a telephone conversation that she had hurt her back at work.
10. Anita Smyres is currently employed by defendant-employer as an inspector. Ms. Smyres worked with plaintiff since early 1997. When they began working together in early 1997, plaintiff related to Ms. Smyres a prior history of back problems and complained of continued back problems in early to mid 1997. Ms. Smyres did not witness any injury to plaintiffs back and plaintiff never reported to her in the break room that plaintiff had just hurt her back at work.
11. Shirley Hicks, a former instructor who no longer works for defendant-employer, also offered testimony on plaintiffs behalf. Ms. Hicks originally testified that she was working in plaintiffs area in June 1997. She was transferred from the area where plaintiff worked to a different plant in March 1997 and later testified that it was March 1998 when she transferred. Ms. Hicks left defendant-employer after a plant shutdown at the end of 1998. Ms. Hicks testified that while at work, plaintiff told Ms. Hicks that she had hurt her back while pushing boxes on the line. Ms. Hicks saw no injury or incident and did not remember the time of day that this occurred. More importantly, Ms. Hicks did not remember even an approximate date that this occurred and cannot remember when plaintiff said the incident occurred. The only specific thing Ms. Hicks could recall is that when she heard about the incident, she promptly told her supervisor at the time, Brian Mosteller.
12. Brian Mosteller, a current supervisor at defendant-employer, did not supervise plaintiff in June 1997. During that time, Mr. Mosteller was a second shift supervisor in plaintiffs plant while plaintiff and the other hourly witnesses all worked on first shift. Mr. Mosteller became the first shift supervisor in November 1997. Prior to that, he did not supervise plaintiff or the first shift and had not done so. Because plaintiff was already on a leave of absence in November 1997, plaintiff only worked for Mr. Mosteller from November 1998, when she returned to work, though early 1999, when she again went out of work. Mr. Mosteller testified that neither plaintiff nor Ms. Hicks ever reported to him that plaintiff hurt her back on the job. Mr. Mosteller never filled out an incident report on plaintiff.
13. Plaintiff agreed with much of Mr. Mostellers testimony. Plaintiff testified that in June 1997, when she allegedly injured her back, her supervisors were Joel Ireland and Darrin Adams, not Mr. Mosteller. She agreed that Mr. Mosteller was not her supervisor in June 1997 and was not her supervisor at any time prior to her going out on leave of absence in October 1997. Plaintiff also clarified Ms. Hicks testimony, explaining that, according to plaintiffs notes, Ms. Hicks discussions with Mr. Mosteller did not occur in June 1997, but on September 22, 1998 and January 28, 1999, well after plaintiffs alleged injury at work. The Commission finds that no report was made to Mr. Mosteller in June 1997 as it is admitted by plaintiff that Mr. Mosteller was not her supervisor at the time.
14. On June 23, 1997, plaintiff presented to and was examined by Kimberly H. Phillips, physicians assistant at Foothills Family Medicine, which plaintiff uses as her family doctor. On that date, plaintiff reported that she had experienced low back pain "for about a week. When Ms. Phillips asked about specific injuries, plaintiff reported "no specific injuries. When plaintiff reported no specific injuries in response to Ms. Phillips question, Ms. Phillips asked about other activities. Plaintiff reported that she did lifting at work and had been "picking vegetables, especially strawberries lately, didnt know if it was from that. Ms. Phillips repeated several times in her deposition that plaintiff did not complain of an initial injury or specific injury to her back. Upon examination of plaintiffs back, Ms. Phillips found that plaintiff had negative straight leg raises, negative figure 4 test, normal strength, and normal reflexes. The examination was essentially normal except for slight tenderness in the lumbar spine and a slight decrease in range of motion. Ms. Phillips diagnosed a muscle strain and prescribed warm compresses and an anti-inflammatory medication.
15. Plaintiff returned to see Ms. Phillips on August 20 and 21, 1997 for a corneal abrasion. At these visits, plaintiff made no complaints of any back problems. Instead, on August 26, 1997, plaintiff returned for a yearly physical, which was performed by Ms. Phillips. Ms. Phillips spent an hour with plaintiff and did a thorough examination. Ms. Phillips examined plaintiffs back and lower extremities and found them to be completely normal. Plaintiff made no complaints of any back problems at this examination. As a result, Ms. Phillips stated that plaintiffs back complaints from June 1997 had resolved as of her August 26, 1997 physical examination.
16. Plaintiff next had contact with Foothills Family Medicine on October 6, 1997, when she called the office to request medication for back pain. Ms. Phillips saw plaintiff on October 9, 1997. Although Ms. Phillips normally recorded any description of an injury or incident, there is no mention in the medical records to indicate the cause or origin of the pain on this occasion. A full examination was not done because plaintiff was in a lot of pain, so ultrasound and medication were prescribed. Ms. Phillips ordered an x-ray and MRI, which showed no disk herniation but degenerative disk disease at L4-L5 with a small radial tear. At this point, plaintiff was referred to a neurosurgeon, Dr. William Brown.
17. On October 12, 1997, plaintiff went to the emergency room at Chatham Memorial Hospital to seek treatment for lower back pain. Plaintiff reported that her symptoms began at work on the previous Tuesday. She could not describe a definite injury at work. Contrary to the history of back problems she had experienced, including having recently undergone treatment with physicians assistant Kimberly Phillips, plaintiff reported that she had not sustained a significant back injury or problem in the past.
18. Plaintiff continued to treat at Foothills Family Medicine and was seen by Ms. Phillips intermittently following October 1997. During the entire course of treatment, plaintiff never reported any specific work-related incident or injury to her back. As a result, Ms. Phillips was never able to reach a conclusion as to the source of plaintiffs back problems.
19. Based upon plaintiffs failure to be truthful about her history of back problems during her testimony as well as when she sought treatment at Chatham Memorial Hospital, her admission to physicians assistant Kim Phillips that she was not sure if she was hurt at work or at home, the lack of a witness who was working with plaintiff at the time of her injury who will corroborate her claim that she reported a work-related injury near the date that she alleges she sustained an injury, and the Deputy Commissioners observation of the demeanor of the plaintiffs in court testimony, the Deputy Commissioner did not find credible plaintiffs testimony that she sustained any type of work-related incident or injury to her back. The Full Commission declines to reverse the credibility determination of the Deputy Commissioner and finds plaintiff has failed to prove by the greater weight that she sustained an injury by accident arising out of and in the course of her employment.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Employee did not suffer a compensable back injury or specific traumatic incident to her back arising out of her employment while employed by defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Plaintiffs claim, therefore, is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs claim under the North Carolina Workers Compensation Act is HEREBY DENIED.
2. Defendant shall pay an expert witness fee in the amount of $265.00 to Dr. Brown.
3. Each side shall pay its own costs.
This the ___ day of August 2000.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/________________ RENEE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER